IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Darwin National Assurance Co., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 1:13-cv-01319-TLW |
| ) | |
| Matthews & Megna LLC; ) | |
| Benjamin R. Matthews; and Tony R. Megna, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**OPINION AND ORDER**

The Plaintiff, Darwin National Assurance Co. (hereinafter "Darwin" or "Plaintiff"), filed the above-captioned declaratory judgment action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Fed. R. Civ. P. 57 on May 15, 2013. (Doc. #1). In this action, Darwin seeks to obtain a determination and declaration by this Court of the rights and obligations arising out of four separate Lawyers Professional Liability Insurance Policies issued by Darwin to the Defendants, Matthews & Megna, LLC; Benjamin R. Matthews; and Tony R. Megna (collectively the "Defendants"). (Doc. #1). This matter is now before the Court for consideration of the Plaintiff Darwin's Motion for Summary Judgment. (Doc. #22).

Darwin filed a Motion for Summary Judgment on February 28, 2014 seeking summary judgment on the merits of the above-captioned declaratory judgment action. (Doc. #22). The Defendants filed a response opposing Darwin's motion on March 24, 2014 (Doc. #32), to which Darwin replied on April 10, 2014 (Doc. #38). On June 13, 2014, this Court held a hearing on Darwin's Motion for Summary Judgment, wherein counsel for both parties presented arguments. (Doc. #45). The Court has carefully considered the arguments, pleadings, motions, memoranda, and exhibits of the parties. Darwin's motion for Summary Judgment is now ripe for disposition.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff Darwin initiated this declaratory judgment action against the Defendants on May 15, 2013 seeking a declaration from the Court that Darwin has no obligation to defend or indemnify the Defendants for any matters in connection with the four separate Professional Liability Insurance Policies (the "Insurance Policies") issued to the Defendants by Darwin in the years 2010, 2011, 2012, and 2013.  (Doc. #1 at 21).  Further, Darwin seeks a declaration from the Court that it is entitled to rescind all four of the aforementioned Insurance Policies or, alternatively, that even if it may not rescind, that there would be no coverage under the Insurance Policies for certain matters in state court that the Defendants have requested Darwin to defend pursuant to the Policies.  (Doc. #1 at 21).  The following facts are drawn from the parties' motions, memoranda, and other relevant filings, as well as the June 13, 2014 hearing and the record in this matter.  The parties have not demonstrated that there are any genuine issues of material fact in dispute.  In addition, there has been no request for a bench trial.

The Plaintiff Darwin issued four "claims made" Professional Liability Insurance Policies to the Defendants beginning in 2010.[1] (Doc. #32 at 2). The yearly contracts of insurance were generally renewed annually after the Defendants submitted an application to Darwin for the new Policy.  (Doc. #32).  Each of the Insurance Policies provided one year of coverage, and each Policy Coverage Period began March 1 of the year of issuance and continued through March 1 of the following year.[2]

---

[1] It is unclear from the record whether another entity that was subsumed by Plaintiff Darwin had previously provided insurance to the Defendants and to what extent, if at all.  However, those facts are irrelevant to the issues before this Court in the above-captioned case.  For purposes of this case, the Court assumes, without deciding, that the first Policy Coverage Period began on March 1, 2010.

[2] Specifically, Darwin issued the: (1) "2010-2011 Policy," with Coverage Period from March 1, 2010 through March 1, 2011; (2) "2011-2012 Policy," with Coverage Period from March 1, 2011 through March 1, 2012; (3) "2012-2013 Policy," with Coverage Period from March 1, 2012 through March 1, 2013; and (4) "2013-2014 Policy," with Coverage Period from March 1, 2013 through March 1, 2014.

On January 18, 2012, the Defendants reported to Plaintiff Darwin a potential claim under their current 2011-2012 Policy (the "2012 Claim"). (Doc. #32-10 at 2–3). It is undisputed that the 2012 Claim was submitted by the Defendants to Darwin within the Policy Period covered by the 2011-2012 Insurance Policy. The 2012 Claim arose out of a state court filing that purported to be a motion for sanctions against Defendant Megna, yet also stated that monetary damages would be sought. The motion for sanctions was filed by Defendant Megna's opposing counsel, Douglas N. Truslow ("Truslow"), in a closed state court case pursuant to Rule 11 of the South Carolina Rules of Civil Procedure (hereinafter the "2011 Truslow Motion"). (Doc. #22-21 at 2).

In short, the 2011 Truslow Motion formed the basis of the 2012 Claim that the Defendants reported and requested coverage for from Darwin on January 18, 2012. The 2011 Truslow Motion made reference, in a footnote, to a separate motion for sanctions that had previously been filed on November 7, 2007 by Truslow (hereinafter the "2007 Truslow Motion"), against Defendant Megna and/or Defendant Megna's client, while the state court case was still pending and unresolved. The record reflects that the 2007 Truslow Motion was never resolved, but instead was mooted out. (Docs. #32-1 at 3; 32-4). The more recently filed 2011 Truslow Motion sought the imposition of both damages and sanctions in excess of $500,000.00 against Defendant Megna alone, rather than against both Defendant Megna and his client. (Doc. #22-21 at 2).

The 2011 Truslow Motion for which the Defendants sought coverage under the 2011-2012 Policy expressly stated that "[d]amages and sanctions are expected to exceed $500,000.00," and, as stated in the motion, the basis for such relief included Defendant Megna's conduct in the previous state court litigation in which, Truslow alleged, Defendant Megna "interjected frivolous defenses, pleadings and Affidavits and otherwise engaged in wrongful conduct, the result of which has been to harm [Truslow's client]." (Doc. #22-21 at 2). The rule under which relief

was expressly sought in the motion was South Carolina Rule of Civil Procedure 11.[3]

Following the submission of the 2012 Claim by the Defendants to Plaintiff Darwin on January 18, 2012, Darwin later issued and renewed the Defendants' 2011-2012 Insurance Policy with two subsequent Professional Liability Insurance Policies for the years 2012-2013 and 2013-2014, with coverage periods of March 1, 2012 to March 1, 2013 and March 1, 2013 to March 1, 2014, respectively. (Docs. #32-15; 32-16).

By letter dated February 29, 2012 ("February 2012 Denial Letter"), Plaintiff Darwin denied the Defendants' request for coverage and defense of the 2012 Claim submitted under the 2011-2012 Insurance Policy.  (Docs. #22-14 at 2; 32-7 at 2).  Plaintiff Darwin explained in the

---

[3] South Carolina Rule of Civil Procedure 11 states as follows:

(a) Signature. Every pleading, motion or other paper of a party represented by an attorney shall be signed in his individual name by at least one attorney of record who is admitted to practice law in South Carolina, and whose address and telephone number shall be stated. A party who is not represented by an attorney shall sign his pleading, motion or other paper and state his address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The written or electronic signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information and belief there is good ground to support it; and that it is not interposed for delay.

All motions filed shall contain an affirmation that the movant's counsel prior to filing the motion has communicated, orally or in writing, with opposing counsel and has attempted in good faith to resolve the matter contained in the motion, unless the movant's counsel certifies that consultation would serve no useful purpose, or could not be timely held. There is no duty of consultation on motions to dismiss, for summary judgment, for new trial, or judgment NOV, or on motions in Family Court for temporary relief pursuant to Family Court Rule 21, or in real estate foreclosure cases, or with pro se litigants.

If a pleading, motion or other paper is not signed or does not comply with this Rule, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. *If a pleading, motion, or other paper is signed in violation of this Rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee.*

S. C. R. Civ. P. 11 (emphasis added).

4

February 2012 Denial Letter that Darwin was denying coverage for the 2012 Claim because Darwin had determined that the 2012 Claim was based upon the same "wrongful acts or omissions" as the prior sanctions motion first made by Truslow in 2007.  (Docs. #22-14; 32-7).  Therefore, according to Darwin, the 2012 Claim was first made in 2007 and was excluded from coverage.  (Docs. #22-14 at 2–4; 32-7).  Thus, Plaintiff Darwin denied coverage on the basis that the 2012 Claim predated the inception date of the 2011-2012 Policy.  (Docs. #22-14; 32-7).

In addition to denying coverage based on the assertion that the 2012 Claim was first made in 2007 outside of the 2011-2012 Policy Period, the February 2012 Denial Letter additionally noted that another basis for denying coverage was a "condition precedent to coverage set forth in Insuring Agreement I (A) has not been met."  (Doc. #22-4 at 5; 32-7).

Moreover, Darwin further stated in the February 2012 Denial Letter that the 2007 Truslow Motion "provided the basis for you [Defendant Megna] to believe that either you had breached a professional duty, or to foresee that Wrongful Acts referenced in the Motions and/or supporting memorandum might reasonably be expected to be the basis of a Claim against you or the firm. . . Therefore, Darwin reserves its rights to rescind the Policy pursuant to the Policy and Application terms and conditions."  (Docs. #22-14 at 4–5; 32-7).

In essence, Darwin concluded that the 2007 Truslow Sanctions Motion filed in November 2007, which was not reported on any of the Defendants' Applications for Insurance, was a "claim" or an "incident that could result in a claim" that should have been reported and disclosed by the Defendants in its answer to Question 4.c on its Application for Insurance.  (Docs. #22-14 at 4; 32-7).  Darwin thus reserved its right to rescind the 2011-2012 Policy on that basis.  Question 4.c. on the Application asked the applicant specifically whether "any attorney was aware of any claims against the law firm or its attorneys, or any incidents that could result in a claim against the law firm or its attorneys within the past five (5) years."  (Docs. #32-7 at 5; 32-

4).

This declaratory judgment action now comes before the Court on motion for summary judgment by Plaintiff Darwin. (Doc. #22). The Court has carefully reviewed all of the submissions of the parties, the record, as well as the transcript of the June 13, 2014 hearing. The Plaintiff's motion is now ripe for decision.

## II. <u>LEGAL STANDARD OF REVIEW</u>

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment if the pleadings, responses to discovery, and the record reveal "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). This burden requires the movant to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of any genuine issues of fact. <u>Celotex</u>, 477 U.S. at 323; <u>see also</u> <u>Anderson</u>, 477 U.S. at 249.

Though the moving party bears the initial burden, the nonmoving party must then produce specific facts showing that there is a genuine issue for trial. <u>See</u> <u>Celotex</u>, 477 U.S. at 334. In satisfying this responsibility, the nonmoving party must offer more than a mere "scintilla of evidence" that a genuine issue of material fact exists, <u>Anderson</u>, 477 U.S. at 252, or that there is "some metaphysical doubt" as to material facts. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). Rather, the nonmoving party must produce evidence on which a jury could reasonably find in its favor. <u>See</u> <u>Anderson</u>, 477 U.S. at 252.

6

In considering the motion for summary judgment, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. See Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there [being] no genuine issue for trial." Matsushita, 475 U.S. at 587 (1986) (internal quotations omitted).

Summary judgment should only be granted in those cases in which there is no issue of material fact involved and inquiry into the facts is not necessary to clarify application of the law. McKinney v. Bd. of Trustees Mayland Cmty. Coll., 955 F.2d 924 (4th Cir. 1992). A district court should not grant summary judgment "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under the circumstances." Campbell v. Hewitt, Coleman & Assocs., 21 F.3d 52, 55 (4th Cir. 1994).

The Court has subject matter jurisdiction in the instant case pursuant to 28 U.S.C. § 1332, diversity jurisdiction. The parties agree that South Carolina law governs this case; therefore, the Court will apply South Carolina law.

### III. DISCUSSION

### 1. RESCISSION

Plaintiff Darwin first asserts that it is entitled to rescind all four Insurance Policies it provided to the Defendants because the Defendants' answer of "NO" to Question 4.c on the 2010 Application was a false warranty. Darwin attempts to distinguish the legal standards required for rescission based upon whether the misstatement is determined to be a *false warranty* or a *material misrepresentation*. Darwin contends the Defendants' answer constituted a false warranty, and that an insurer is entitled to rescind the Insurance Policies without demonstrating any intentionality on the part of the insured or the materiality of the alleged misstatement.

Therefore, Darwin argues, under South Carolina law, Darwin is entitled to rescind all four Insurance Policies due to the false warranty as they are void *ab initio*.

In turn, the Defendants argue that there is no distinction in the legal standard required for rescission based upon whether a false statement constitutes a false warranty or a material misrepresentation. Rather, the Defendants contend, that distinction is irrelevant and not recognized under South Carolina law. The Defendants assert that an insurer seeking to rescind an insurance policy must always demonstrate that the false statement was made by an insured with the intent to deceive, and that it was material to the risk and relied upon by the insurer.

The Court agrees with the Defendants. The case law demonstrates that South Carolina courts do not recognize a distinction between a false warranty and a material misstatement in an application for insurance in terms of the legal standard governing rescission of the insurance policy. See Atl. Life Ins. Co. v. Beckham, 240 S.C. 450, 458–59, 126 S.E.2d 342, 345 (1962) (citations omitted). Rather, South Carolina law dictates that, regardless of whether a statement is classified as a warranty or a representation, rescission is governed by the same legal standard, and a false statement will not void the policy unless certain elements are proven. See Carroll v. Jackson Nat'l Life Ins. Co., 307 S.C. 267, 268, 414 S.E.2d, 777, 778 (1992).

In South Carolina, the common law principally governs when an insurer may rescind a policy based upon information provided or not provided in an insurance application. See id. South Carolina courts have adopted a five-part test to determine when *ab initio* rescission is appropriate. Strickland v. Prudential Ins. Co., 278 S.C. 82, 292 S.E.2d 301, 304 (1982) (citations omitted). In order to rescind a policy of insurance, the insurer must demonstrate: 1) the falsity of the statements complained of; 2) that the falsity was known to the applicant; 3) were material to the risk; and 4) made with intent to defraud the insurer; and 5) relied upon by the insurer in issuing the policy. Id.; see also Carroll v. Jackson Nat'l Life Ins. Co., 307 S.C. 267, 268, 414

S.E.2d 777, 778 (1992).

Generally, "an insurer is entitled to rely on an applicant's answers to specific questions [in an Insurance Application]; it has no obligation to make an independent inquiry as to their truth." Am. Centennial Ins. Co. v. Sinkler, 903 F. Supp. 408, 411 (E.D.N.Y. 1995) (interpreting South Carolina law). Under South Carolina law, an "insurance policy is to be liberally construed in favor of the insured and strictly construed against the insurer. . . [and] exclusions in an insurance policy are always construed most strongly against the insurer." Am. Credit of Sumter, Inc. v. Nationwide Mut. Ins. Co., 378 S.C. 623, 628–29, 663 S.E.2d 492, 495 (citing Kraft v. Hartford Ins. Co., 279 S.C. 257, 305 S.E.2d 243 (1983)).

### A.  Was There A False Statement?

Plaintiff Darwin argues it is entitled to rescind all four Insurance Policies it issued to Defendants because, Darwin contends, the Defendants intentionally made false statements in the Application for Insurance that were known to the Defendants, material to Darwin's risk, and relied on by Darwin in issuing the Policies.

Under South Carolina law, insurance policies are contracts and are subject to the general rules of contract construction. Am. Credit of Sumter, Inc. v. Nationwide Mut. Ins. Co., 378 S.C. 623, 628, 663 S.E.2d 492, 495 (2008) (citation omitted). When interpreting an insurance application or insurance policy, the courts "must give policy language its plain, ordinary, and popular meaning." Id. Therefore, this Court begins its review of the Insurance Applications and Policies, and specifically, the meaning of Question 4.c, by considering the words according to their plain, ordinary and customary meaning. See id.; see, e.g., Carolina Cas. Ins. Co. v. Draper & Goldberg, P.L.L.C., 138 F. App'x 542, 548 (4th Cir. 2005).

Question 4.c. on the Application for Insurance for the 2010-2011 Policy is included under the broad heading of Question 4: "CLAIMS/CIRCUMSTANCES/DISCIPLINARY

PROCEEDINGS."[4]  Specifically, Question 4.c asks the applicant for professional legal liability

insurance whether:

> Any attorney is aware of any claims against the law firm or its attorneys, or any
> incidents that could result in a claim against the law firm or its attorneys within
> the past five (5) years.[5]

(Doc. #22-4 at 2).

    To be entitled to rescind the Insurance Policies, Plaintiff Darwin must first prove that the

Defendants misrepresented facts on the Insurance Application.    Darwin argues that the

Defendants' response of "NO" to Question 4.c of the Application was a misrepresentation

because the Defendants had knowledge of four "incidents that could result in a claim."  Thus,

Darwin argues the Defendants' falsely answered Question 4.c.  The parties agree that, during the

relevant time period, there was no "claim" against the law firm or its attorneys that should have

been disclosed by the Defendants in response to Question 4.c.  A claim is made, within the

meaning of the Insurance Policies and Applications in question, only when a demand for money,

property, legal services, or some specific relief for damages is made.  Thus, to determine whether

the Defendants answered Question 4.c truthfully, the Court must determine the meaning of

"incident" as used in the Applications.  See, e.g., Draper & Goldberg, 138 F. App'x at 548 (4th

Cir. 2005).

    The critical question regarding rescission becomes whether the Defendants were "aware

of any . . . *incidents* that could result in a claim against the law firm or its attorneys within the

past five (5) years."  (emphasis added).  The Insurance Applications, as well as the Insurance

Policies themselves, fail to define the word "incident."  Therefore, the Court interprets the use of

---

[4] Additionally, the language of Question 4.c is identical on  the 2011-2012 and 2012-2013 Insurance Applications.
[5] There are three parts to Question 4 on the Application, which is titled:
"CLAIMS/CIRCUMSTANCES/DISCIPLINARY PROCEEDINGS."  Question 4.a asks: "Has any attorney been
the subject of any bar complaint, investigation or disciplinary proceeding within the past 10 years?"; Question 4.b
asks: "Has any attorney been disbarred or refused admission to the bar by any bar association, court or
administrative agency?".

that word in Question 4.c in accordance with its ordinary meaning.  As relevant to the instant case, Black's Law Dictionary defines "incident" as "[a] discreet occurrence or happening [an incident of copyright infringement]."  Black's Law Dictionary 15c (9th ed. 2009).  Additionally, Merriam-Webster defines "incident" as: "an occurrence of an action or situation that is a separate unit of experience."  Merriam-Webster, n.d. Web.

Specifically, Plaintiff Darwin argues that the Defendants answered Question 4.c falsely by not "disclosing [Defendant Megna's] judicially determined pattern of misconduct."  (Doc. #22-3 at 10–11 ¶ 29).  According to the Plaintiff, the following four matters constitute "incidents" within the meaning of Question 4.c and which demonstrate a "pattern of misconduct" that should have been disclosed: (1) 2007 Truslow Motion; (2) April 3, 2008 order issued by Judge Manning (the "2008 Order"); (3) April 1, 2009 order issued by Judge Manning (the "2009 Order"); and (4) January 15, 2010 Bankruptcy Court order (the "2010 Bankruptcy Order"). Plaintiff Darwin argues that those four matters should have been disclosed by the Defendants on the 2010-2011 Insurance Application in answering Question 4.c because they are "incidents that could result in a claim" and were all known to the Defendants at the time they applied for the 2010-2011 Policy; thus, the Plaintiff contends, the Defendants' false answer entitles it to rescind the Insurance Policies.

The ultimate legal question this Court must decide is whether the 2007 Truslow Motion, the 2008 Order, the 2009 Order, or the 2010 Bankruptcy Order constitute "incidents that could result in a claim" against the Defendants.  If the Court answers that question in the affirmative, Plaintiff Darwin will have satisfied the first element required for rescission: a misrepresentation by the Defendants on their 2010 Application for Insurance, and the Court would then examine the other elements required for rescission.  Otherwise, the Plaintiff would not be entitled to rescind the Insurance Policies.

When considering whether the four matters constitute "incidents that could result in a claim" such that Defendants' answer to Question 4.c was false, South Carolina law requires that the Court use a reasonable attorney standard.  Nat'l Specialty Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh Pa., C/A No. 6:10-826-TMC, 2012 WL 1825370, at *3 (D.S.C. May 18, 2012). In doing so, the Court must ask whether a reasonable attorney, in possession of the facts that the insured actually possessed at the time he applied for insurance, would reasonably understand Question 4.c to require the disclosure of the four aforementioned matters.   See, e.g., id.

### The 2007 Truslow Motion

First, Plaintiff Darwin contends that the 2007 Truslow Motion constitutes an "incident that could result in a claim" that should have been disclosed by the Defendants on their Application response to Question 4.c.  As an initial matter, the Court notes that the 2007 Truslow Motion is one page consisting of two sentences.[6]  (Doc. #22-17 at 2).  The filing is actually captioned as a "Notice of Motion and Motion Pursuant to SCRCP 56(G), 30 AND 11."  (Doc. #22-17).  The 2007 Truslow Motion does not demand specific monetary damages or specific relief of any kind.  While the Court notes the motion does state that Truslow "will move before the Court for an assessment of fees and costs against defendant Lee [state court defendant represented by Megna] and/or her attorney for the reasons set forth in a Memorandum to be submitted to the Court," there is no specific relief of damages sought in the 2007 Truslow Motion.  Additionally, the Memorandum referenced in the motion is not a part of the record in the instant case; neither party has submitted it to this Court, nor has either party indicated that Truslow ever filed that Memorandum.

---

[6] The "Notice of Motion and Motion Pursuant to SCRCP 56(G), 30 AND 11" reads as follows, in its entirety: "TO: TONY R. MEGNA, ATTORNEY FOR DEFENDANT GINA L. ANASTI LEE: PLEASE TAKE NOTICE that Plaintiff, by and through the undersigned attorney, on the 10th day after service hereof or at such time and place as the Court may set, will move before the Court for an assessment of fees and costs against Defendant Lee and/or her attorney for the reasons set forth in a Memorandum to be submitted to the Court.  The undersigned counsel for Plaintiff hereby certifies that consultation with opposing counsel would serve no useful purpose."  (Doc. #22-17 at 2).

"Claim" is defined by the Insurance Policy as: "(1) any written notice or demand for monetary relief or legal services; (2) any civil proceeding in a court of law; (3) any administrative proceeding, other than a disciplinary proceeding; or (4) request to toll or waive a statute of limitations; made to or against any Insured seeking to hold such Insured responsible for *damages* for a Wrongful Act." (Doc. #22-7; 2010-2011 Policy § II.C) (emphasis added). The Court notes that the definition of Claim in the Policy incorporates the requirement that, in order to constitute a claim covered by the Policy, the action must seek to hold the Insured responsible for *damages*. The Policy goes on to define "Damages" as "the monetary portion of any judgment, award or settlement, including pre- and post-judgment interest." (Doc. #22-7 at 14 ¶ E; 2010-2011 Policy § II.E).

The definition of "damages" in the Policy specifically states that "Damages shall not include: (1) criminal or civil fines, taxes, penalties (statutory or otherwise), *fees or sanctions*; (2) punitive, exemplary or the multiplied portion of damages; (3) matters deemed uninsurable by law; (4) the return or restitution of *legal fees, costs and expenses*, no matter how claimed; or (5) any form of equitable or non-monetary relief . . . ." (Doc. #22-7; 2010-2011 Policy § II.C) (emphasis added). "Wrongful Act" is defined in the Policy as "an actual or alleged act, error or omission by an Insured, solely in the performance of or failure to perform legal services." Additionally, according to the Policy, "Related Act or Omission means all acts or omissions based on, arising out of, directly or indirectly resulting from, or in any way involving the same or related facts, circumstances, situations, transactions, or events or the same or related series of facts, circumstances, situations, transactions or events." (Doc. #22-7).

The Court emphasizes that, according to the 2010-2011 Insurance Policy (and the subsequent Policies), in order to constitute a "Claim" covered by the Policy, it must "seek[] to hold [the] Insured responsible for damages for a Wrongful Act." (Doc. #22-7). As noted, the

term damages is defined by the Policy to specifically exclude sanctions and fees and costs.

Further, the record reflects that Darwin acknowledged in the June 13 hearing that if the 2007 Truslow Motion was the only matter not disclosed by Defendant Megna on the Application, there would not be a basis for rescission.  (Transcript of Hearing at p. 22).

After careful consideration, the Court finds that the 2007 Truslow Motion is insufficient to establish the Defendants made a false statement in answering Question 4.c on the Application for the 2010-2011 Insurance Policy.  As explained, the Court concludes that the motion does not constitute a claim within the meaning of the Policy, nor does it constitute an "incident that could result in a *claim*" because it does not seek any damages covered by the Policy, nor any specific monetary relief of any kind.  (Doc. #22-4 at 2) (emphasis added).

## The 2008 Order

Second, the Plaintiff contends that the 2008 Order constitutes an "incident that could result in a claim" such that the Defendants answer of "NO" to Question 4.c was false.  The 2008 Order was issued by Judge Manning in connection with a state court case in which Defendant Megna represented the defendant in that case.  The order addressed a motion for reconsideration of a previous order on summary judgment and involved an evidentiary hearing, at which Defendant Megna did not appear.  Although strongly worded and critical of Defendant Megna, the order focuses on Defendant Megna's professionalism, his inattention to detail, "as well as his unwarranted unjustified and untrue attacks on opposing counsel who clearly appear[ed] to have been remarkably restrained and professional in the representation of his client in dealing with Megna under the circumstances."  (Doc. #22-18 at 6 ¶ 13).

After careful consideration, the Court finds that the 2008 Order is not an "incident that could result in a claim" within the meaning of Question 4.c on the Insurance Application.  Thus,

not disclosing the 2008 Order on its Application did not constitute a false statement by the Defendants.  While the 2008 Order may have caused Defendant Megna to be concerned about the judge's impression of him as he knew the judge in that case was displeased with his performance, and could reasonably expect that he could potentially be referred to the Bar or other disciplinary authority, the 2008 Order did not seek monetary damages of any kind, and certainly was not itself a claim against the Defendants, nor did it contain anything to indicate that Megna's actions could lead to a claim as defined in the Insurance Policy.  (Doc. #22-18 at 4).

## The 2009 Order

The same reasoning applies to the 2009 Order.  Plaintiff Darwin also points to the 2009 Order issued by Judge Manning, arguing that it should have been disclosed on the Application as it is an incident that could result in a claim against the Defendants.  The Court disagrees.  The 2009 Order involved the same state court case as the 2008 Order, and was issued by Judge Manning on April 1, 2009.  The 2009 Order addressed a motion filed on April 7, 2008 by Defendant Megna that requested reconsideration and a rehearing in connection with the aforementioned April 3, 2008 Order.  Defendant Megna filed the motion based upon the assertion that Defendant Megna, as counsel for the defendant in the state court case, did not receive notice of the hearing.  At the April 1, 2009 hearing on this motion for reconsideration, the state court defendant had new counsel and was no longer represented by Defendant Megna.  The Court finds that, although also critical of Defendant Megna, the 2009 Order is not an incident that could result in a claim against the Defendants within the meaning of Question 4.c on the Application.  Again, Defendant Megna was put on notice by that order that the judge found him less than credible and may have even been exasperated by Megna's conduct before the court.  However, a judge being critical of an attorney in an order, or an indication in an order

that a judge finds the attorney less than credible, is not an incident that would put a reasonable attorney on notice that that order could result in a claim, as defined by the Insurance Policy.

Furthermore, the 2009 Order specifically states that "Appellant [Megna's now-former client who was defendant/appellant in the state court case] has not suffered any prejudice under the circumstances." (Doc. #22-19 at 11). The judge went out of his way to make clear that Defendant Megna's former client suffered no prejudice and that her new counsel "appeared to have been well-prepared." (Doc. #22-19 at 11). The judge specifically stated that, regardless of Defendant Megna's conduct, "[Megna's] client has suffered no prejudice." (Doc. #22-19 at 12). Accordingly, particularly in light of the fact that Defendant Megna's client was not prejudiced by Defendant Megna's conduct or representation, the Court finds that the 2009 Order is not an incident that could result in a claim against the Defendants such that it was required to be disclosed on the Insurance Application.

## The 2010 Bankruptcy Order

Fourth, Plaintiff Darwin asserts the 2010 Bankruptcy Order also should have been disclosed by the Defendants in answering Question 4.c on the Insurance Application, and the failure to disclose entitles Darwin to rescind the Insurance Policies. The 2010 Bankruptcy Order simply addressed and ruling on a motion to stay orders pending appeal filed by Defendant Megna on behalf of his client, the same client in the previously discussed state court case. In that motion, Defendant Megna, on behalf of his client, sought a stay of the client's pending bankruptcy case until the conclusion of the appeal of the state court case.

After careful consideration, the Court concludes that, while the bankruptcy judge ultimately denied Defendant Megna's motion, the 2010 Bankruptcy Order does not constitute an "incident" required to be disclosed in Defendants' answer to Question 4.c. The ruling in that

order is on the merits of the stay issue and contains no specific reference to Defendant Megna. The most that could be construed as criticism of Defendant Megna or his client was the court's comment that one of the reasons his client filed for bankruptcy relief was to delay a final ruling in the state court case.  The 2010 Bankruptcy Court Order focused his reasoning on the factors a party must show to be entitled to a stay.  Ultimately, the motion to stay was denied, based primarily upon the judge's determination that there would be substantial harm to the nonmoving party by the delay and that the unlikelihood for success on appeal.  However, there is no suggestion that the 2010 Bankruptcy Order could have formed the basis or was an incident itself that could result in a claim against the Defendants.  In fact, it is worth noting that the Defendants ultimately obtained for the client a Bankruptcy Discharge.  (Doc. #32-2 at 2–3).  In addition, the client seemed ultimately satisfied with the Defendants' performance and representation.  The standard requires the Court to consider the facts known to the Defendants at the time of the Insurance Application.  The record reflects that, as of March 1, 2010, the Defendants had no reason to anticipate that the 2010 Bankruptcy Order would result in a client or other third party filing a claim against them.  Thus, after careful review of the 2010 Bankruptcy Order, the Court concludes that the nondisclosure of the order is insufficient to establish that the Defendants falsely answered Question 4.c on the Insurance Application.

## The Four Matters in the Aggregate

Finally, the Plaintiff argues that, when taken together, the four aforementioned matters in the aggregate demonstrate a "pattern of misconduct" on the part of Defendant Megna, which, the Plaintiff argues, rises to the level of an "incident" within the meaning of the Applications.  After careful review, the Court disagrees.   In essence, the four matters discussed above, the nondisclosure of which the Plaintiff argues entitles it to rescind four contracts of insurance, are

not claims or incidents that could give rise to a claim, even when considered together. A "pattern of misconduct" is simply not an "incident" that could result in a claim covered by the Insurance Policies. In the June 13, 2014 Hearing, this Court asked counsel for Darwin:

> (Q) The Court: "What is the definition of incident and what would it cover?"
>
> (A) Counsel for Darwin: "What the cases say is that [incident] means are you aware of circumstances that could result in a claim? So incident, circumstances, facts, it's basically saying—has something happened in your practice that you know might result in a claim? . . . And one of the examples . . . examples that's often given is a statute of limitations. If you missed a statute of limitations but you don't know it, well, then you're not aware of something that could result in a claim. If you missed the statute of limitations and you know you missed it, then you are. So the question is, does he know about something that happened in his practice that could result in a claim, and here he knows, well, in two separate orders a judge found he engaged in . . . intentional misconduct. That could result in a claim."

(Transcript of Hearing at p. 30–31).

As explained above, the example given by counsel for Plaintiff Darwin as an "incident" within the meaning of Question 4.c was "missing a statute of limitations." The Court agrees that that example would qualify as an incident that, if the attorney is aware of it, could result in a claim against the attorney. In addition, an "incident" such as an attorney missing a statute of limitations for his client, is the type of "incident" that a reasonable attorney in the same or similar circumstance, and aware of the same facts the Defendants were aware of, would be required to disclose in reading the plain language and answering Question 4.c. On the other hand, the Court concludes that an attorney's opposing counsel in a contentious lawsuit involving issues with discovery and motions to compel, among other issues, filing a notice of a motion for sanctions, and particularly in light of the fact that sanctions are not covered damages under the Policy, is not an incident that could result in a claim thereby requiring disclosure on the Application Question 4.c.

Additionally, the Court concludes that the three court orders Darwin contends should have been disclosed, even when taken together along with the 2007 Truslow Sanctions Motion, are simply insufficient to constitute an "incident that could result in a claim" within the meaning of Question 4.c.  The Court recognizes that the 2008 Order and 2009 Order both contain sharp criticisms of Defendant Megna's conduct, credibility, and his overall professionalism before that state court in that particular case.  However, the Court reiterates that a judge being critical, or even disparaging, of a lawyer's performance in an order, particularly when the lawyer's client has suffered no prejudice, does not necessarily mean that a claim may result against the lawyer.  And while the opposing counsel in the state court case has now instituted the claim for damages and sanctions that is at issue in the instant case, the record is clear that Defendant Megna's client in that case has never instituted any action or claim against the Defendants.  To the contrary, based on the record before the Court, Defendant Megna's state court client was apparently satisfied with the representation she received.  The Defendants did not have reason to anticipate a claim filed by the client.  If an insurance company desires an applicant for insurance to disclose the occasions on which that attorney or law firm had been criticized or found to be less than credible in the past, or each time a judge stated, in an order or orally in court, that an attorney behaved less than professionally in court or each occasion an attorney had made a judge very dissatisfied, then that insurance company could include on the application a question regarding such specific information.  However, the Court concludes that the circumstances just described are not ones that a reasonable attorney, under the undisputed facts of the instant case and those facts known to the Defendants, would reasonably expect to result in a claim against the attorney or the law firm.

The record demonstrates that, as of March 1, 2010, the Defendants were not aware of any

claims against the law firm or its attorneys within the past five years, nor were they aware of any incidents that could result in a claim against the law firm or its attorneys within the past five years.  In connection with the 2012 Claim, the first time the Defendants had knowledge of a "claim seeking damages covered by the Policy" was on November 28, 2011 when the 2011 Truslow Motion was filed.  (Doc. #22-7 at 11).  At that point, the Defendants promptly notified Darwin of the claim on January 18, 2012 (which was the 2012 Claim), and requested that Darwin exercise its "right and duty to defend any claim seeking damages" under the 2011-2012 Insurance Policy.  (Doc. #22-7 at 11).  The 2007 Truslow Motion and the three court orders Darwin cites were not claims under the Insurance contract.  Nor does the Court conclude were they sufficient to provide knowledge to the Defendants of an "incident that could result in a claim."

In short, after careful consideration and review, the Court finds that the Defendants did not falsely answer Question 4.c or otherwise make a material misrepresentation in answering Question 4.c on the 2010-2011 Insurance Application.

While the Court does note that a careful, prudent, and diligent attorney could have disclosed the four matters discussed above, that is not the legal standard the Court must apply. The Court finds that a reasonable attorney, in possession of the facts the Defendants possessed at the time they applied for the 2010-2011 Insurance Policy, cannot be held to conclude that any of those matters were incidents that could result in a claim against the Defendants.

## B.  Intent to Deceive

As discussed above, the Court has concluded that the first requirement for rescission, namely a false statement on the Application, has not been demonstrated in this case.  However, even if the aforementioned matters were considered "incidents that could result in a claim," the Court would still conclude the Plaintiff is not entitled to rescind.  To be entitled to rescind the Insurance Policies, Plaintiff would have to also demonstrate that the Defendants had the intent to deceive, materiality, and reliance.  Based upon the record before it, the Court concludes that the Plaintiff has not proven that the purported nondisclosures were made by the Defendants with the intent to deceive the Plaintiff Darwin.

Darwin argues that the Defendants' intent to deceive can be "inferred because there is no reasonable explanation for the [Defendants'] failure to disclose knowledge of the 2007 Truslow Sanctions Motion or the numerous other incidents that could result in a Claim against the Firm or its attorneys."  (Doc. #22-1 at 30).  However, as noted above, the Plaintiff Darwin assumes for purposes of this argument that the Defendants did in fact "deceive" Darwin by providing a false response to Question 4.c of the Insurance Application.

The Court disagrees.  The Court finds as a matter of law that the Defendants' failure to disclose the information known as of January 26, 2010 does not constitute a material misrepresentation that would entitle the Plaintiff to rescind the 2010-2011 Policy, and consequently, the 2011-2012, the 2012-2013, and the 2013-2014 Policies.  In his Affidavit, Defendant Megna specifically states "[a]t no time, did I nor anyone else on behalf of Matthews and Megna LLC knowingly make any untrue statements of fact on the insurance application or renewal applications to Plaintiff Darwin nor did anyone on behalf of Matthews and Megna LLC ever attempt to deceive or defraud Plaintiff Darwin."  (Doc. #32-1 at 9 ¶ 25).  The Defendant

counters the statement in Defendant Megna's Affidavit citing Floyd v. Ohio General Ins. Co., 701 F. Supp. 1177 (D.S.C. 1988), arguing that "an intent to deceive can be inferred because there is no reasonable explanation for the Firm's failure to disclose Megna's knowledge of the 2007 Truslow Sanctions Motion or the numerous other incidents that could result in a Claim against the Firm or its attorneys."  (Doc. #22-1 at 30).  However, the Court notes that Megna's Affidavit states that he believed that the "2007 motion contained no specific allegations other than a request for 'fees and costs against Defendant Lee and/or her attorney' that I interpreted as being related to the discovery requests and other matters being contested in and around the same time. . . . I did not and still do not believe that the demand for 'fees and costs' set forth in [the] sanctions motion is a 'Claim' as defined in the Darwin Policy."  (Doc. #32-1 at 3 ¶¶ 6–7).

Moreover, Defendant Megna's correspondence with Plaintiff Darwin at and around the time the 2012 Claim was submitted for coverage further supports the lack of any intent to deceive on the part of the Defendants.  (See Doc. #32-10).  The email correspondence demonstrates that Defendant Megna continued to follow-up and keep in contact with Darwin regarding the status of the 2012 Claim.  More specifically, when questioned about the reference made in a footnote of the 2011 Truslow Motion to the 2007 motion, Defendant Megna stated to Plaintiff Darwin, after previous emails on the issue, "[i]n point of clarification, [Truslow] may have requested attorney fees in his motions to compel discovery [which are now moot], but I have no record nor recollection of a motion like [Truslow] has currently made [in the 2011 Truslow Motion]."  (Doc. #32-10 at 8).  Defendant Megna stated in a separate email to Darwin when asked about the 2007 motion, "[a]s I have repeatedly told you, this is the first time I am aware of [Truslow] requesting damages.  Although I believe the matter to be meritless, it must be defended by [Darwin]."  (Doc. #32-10 at 10).  Additionally, despite Plaintiff Darwin's assertion

to the contrary, Defendant Megna appears to have complied with all requests to provide additional documentation and information in connection with the 2012 Claim requested by Darwin. (Doc. #32-10 at 6, 7, 8, 10–11, 13–15, 16–17, 25–26). The email correspondence between Defendant Megna and Plaintiff Darwin further demonstrates that the Defendants did not fail to disclose on its Insurance Applications the 2007 Truslow Motion and three court orders with the intent to deceive Plaintiff Darwin.

Accordingly, after careful consideration, the Court concludes that the Defendants have provided a reasonable explanation for not disclosing the 2007 Truslow Sanctions Motion and three court orders such that the Court will not infer an intent to deceive from the mere failure to disclose. Accordingly, the Defendants' failure to disclose the information known as of March 1, 2010 (or January 26, 2010—the date of the Application) was not done with the intent to deceive Plaintiff Darwin such that it would entitle the Plaintiff to rescind the 2010-2011 Policy.

### C. Materiality and Reliance

In addition to showing that the insured misrepresented or omitted facts on an insurance application with intent to deceive the insurer, to be entitled to rescind a policy, the insurer must also show that the misrepresentation or omission was material to the risk when assumed. A false representation is material if a truthful answer would have reasonably influenced the insurance company's decision to issue the policy.

Based on the record before it, the Court concludes that Plaintiff Darwin has sufficiently demonstrated that the Defendants' Answer to 4.c was material to the risk. Plaintiff Darwin included an Affidavit of a Senior Underwriter (Doc. #22-3) as an Exhibit to its motion for

summary judgment.[7]  In the Affidavit, the underwriter considers the 2007 Truslow Motion and the three court orders, and ultimately concludes that "Darwin would not have issued the 2010-2011 Policy" had they had knowledge of those four matters on the 2010 Application.  (Doc. #22-3 at 11 ¶ 30).  Therefore, the underwriter states that because the 2010-2011 Policy would not have been issued by Plaintiff Darwin to the Defendants, "there would have been no policy in place to be renewed for any of the subsequent policy periods for which [Plaintiff Darwin] bound coverage, meaning that Darwin also would not have issued the 2011-2012 Policy, the 2012-2013 Policy or the 2013-2014 Policy." (Doc. #22-3 at 11 ¶30).

"[A]n underwriters sworn statements, particularly when uncontradicted, are sufficient to demonstrate the materiality of the misrepresentation."  TIG Ins. Co. v. Robertson, Cecil, King & Pruitt, 116 F. App'x 423, 426 (4th Cir. 2004).  Accordingly, the Court finds that Plaintiff Darwin sufficiently established the element of materiality to the risk.

## 2.  COVERAGE UNDER THE POLICIES

Plaintiff Darwin next argues that even if it is not entitled to rescind the Policies, and the Policies therefore are not void *ab initio*, alternatively, there is no coverage for the 2012 Claim under the Defendants' 2011-2012 Policy.  Accordingly, Plaintiff Darwin argues, it is still entitled to summary judgment in its favor.

Darwin contends that there is no coverage under any of the Insurance Policies for three independent reasons: (1) the Sanctions Matter is a "single claim" that was first made prior to the inception of the 2011-2012 Policy Period; (2) the Policies' "prior knowledge condition" precedent was not satisfied with respect to the Sanctions Matter; and (3) the Sanctions Matter does not seek "damages" covered by the Policies.  This Court will now address each of the Plaintiff's arguments.

---

[7] The underwriter was employed by Allied World National Assurance Company, an affiliate of the Plaintiff, Darwin National Assurance Company, that handled underwriting and claims processing for Darwin.  For purposes of simplicity, the Court will refer to the underwriting and claims officials as Darwin employees.

## A. <u>Single Claim Exclusion</u>

Plaintiff Darwin first argues that the Insurance Policies do not provide coverage for the Sanction Matter at issue because the 2012 Claim arises out of the same "Wrongful or Related Act" as a "Claim" that was first made in 2007, and consequently is a "single claim" within the meaning of the Insurance Policies.  More specifically, Darwin asserts that the 2007 Truslow Sanctions Motion filed on November 7, 2007 (Doc. #22-17 at 2) constituted a claim that arose prior to the inception of the Insurance Policies.  Therefore, Darwin contends that the 2012 Claim is excluded because it constitutes a "single claim" that was first made in 2007, which is outside the scope of the coverage period.

In turn, the Defendants contend that the 2011 Truslow Motion is an entirely separate and distinct motion, which for the first time asserted a claim for money damages.  Despite the reference to the 2007 Order, the Defendants argue that the 2011 Truslow Motion is its own separate claim, and that it should not be held to a standard which would have required them to submit the 2007 Motion for coverage when no damages were sought, such that it was not a claim under any Policy.

Plaintiff Darwin points to the following language in the Insurance Policies:

RELATED ACTS
All claims based upon or arising out of the same Wrongful Act or Related Act or Related Act or Omission shall be considered a single Claim and shall be considered first made at the time the earliest Claim arising out of such a Related Act or Omission was first made.

(Doc. #22-5 at 17; § IV.C).

As previously discussed, Plaintiff Darwin notes that there was a notice and motion for sanctions filed by Defendant Megna's opposing counsel in a state court case, Truslow, on November 7, 2007.  (Doc. #22-17 at 2).  The Defendants only sought coverage, however, for the

claim first made by Truslow in November 2011 which included a specific demand for damages and sanctions "in excess of $500,000.00." The Defendants notified Darwin of the November 2011 motion made by Truslow on January 18, 2012, resulting in the 2012 Claim.

The Defendants argue that the 2012 Claim (stemming from the 2011 Truslow Motion) and the 2007 Truslow Motion do not constitute a "single claim" within the meaning of the Insurance Policies. The Defendants further contend that the filing of the 2011 Truslow Motion was the first time the Defendants knew or should have known or were otherwise put on notice of the potential for a "claim" against the Defendants within the meaning of the Insurance Policies. Thus, the Defendants assert that the 2012 Claim was first made within the 2011-2012 Policy Period, and is therefore covered under that Policy. In addition, the Defendants contend that Darwin has two separate and distinct obligations under the Insurance Policies: a duty to defend as well as a duty to provide coverage for damages.

The 2011-2012 Insurance Policy specifically states under Section I. Part A, which is entitled "COVERAGE" that "the Insurer shall have the right and duty to defend any Claim seeking Damages that are covered by this Policy and made against an Insured even if any of the allegations of the Claim are groundless, false or fraudulent." (Doc. #22-7 at 11 (2011-2012 Policy § I.A.2).

After careful consideration, the Court concludes that the 2007 Truslow Motion does not constitute a "claim" within the meaning of the Insurance Policies. The Court further finds that there are no genuine issues of material fact that the 2012 Claim was first made on the date of the filing of the 2011 Truslow Motion, November 11, 2011. Therefore, the 2012 Claim is within the Policy Coverage Period of the Defendants' 2011-2012 Insurance Policy.

## B.  **Prior Knowledge Condition**

The Plaintiff next argues that the 2012 Claim is not covered under the Insurance Policies because the Policies' "prior knowledge condition" was not satisfied with respect to that claim.[8] (Doc. #22-1 at 38).   The 2011-2012 Policy contains a "Prior Knowledge Condition" which provides that coverage is only available for a Claim if:

> (b) prior to the inception date of the first policy issued by the Insurer if continuously renewed, no Insured had any basis (1) to believe that any Insured had breached a professional duty; or (2) to foresee that any such wrongful or related act or omission might reasonably be expected to be the basis of a claim against any Insured.

 (Doc. #22-7 at 11 (2011-2012 Policy § I.A)).

The Court notes that this argument involves a similar analysis as set forth above in the context of the single claim and false statement discussion.   Whether a reasonable attorney in possession of given knowledge would reasonably foresee that a claim might be forthcoming, for purposes of a prior knowledge condition in a claims-made insurance policy, incorporates both subjective and objective elements.   See Nat'l Specialty Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh Pa., C/A No. 6:10-826-TMC, 2012 WL 1825370, at *3 (D.S.C. May 18, 2012); see also Westport Ins. Corp. v. Lilley, 292 F. Supp. 2d 165, 172–73 (D. Me 2003).   First, the court is to consider whether the insured had actual knowledge of the underlying facts which are the basis of the claim (subjective), and second, would a reasonable insured in possession of such facts

---

[8] The 2010-2011 Insurance Policy Part I A governs Coverage in connection with the Insuring Agreement.  That Part includes, among other things, the following language: "It is a condition precedent to coverage under this Policy that the Wrongful Act upon which the Claim is based occurred: (1) during the Policy Period; or (2) on or after the Retroactive Date and prior to the Policy Period, provided that all of the following three conditions are met: (a) the Insured did not notify any prior insurer of such Wrongful Act or Related Act or Omission; and (b) prior to the inception date of the first policy issued by the Insurer if continuously renewed, no Insured had any basis (1) to believe that any Insured had breached a professional duty; or (2) to foresee that any such Wrongful Act or Related Act or Omission might reasonably be expected to be the basis of a Claim against any insured; and (c) there is no policy that provides insurances to the Insured for such liability or Claim."  (Doc. #22-7 at 11).

This Part concludes by stating: "Subject to the Limits and Liabilities, the Insurer shall have the *right and duty to defend any Claim seeking Damages* that are covered by this Policy and made against an Insured even if any of the allegations of the Claim are groundless, false or fraudulent."  (Doc. #22-7 at 11) (emphasis added).

have a basis to believe that these facts could constitute a claim (objective).

Therefore, the pivotal question is whether a reasonable attorney with the knowledge possessed by the Defendants at the time they applied for insurance would believe that there was a potential claim to report on the insurance application. As previously discussed, as of March 1, 2010, the date coverage began under the 2010-2011 Policy, Defendant Megna had knowledge of the 2007 Truslow Sanctions Motion, the 2008 Order, the 2009 Order, and the 2010 Bankruptcy Court order. (Doc. #22-1 at 39).

After careful consideration, the Court does not conclude that a reasonable attorney with knowledge of those facts would have a basis to both believe that an insured had breached a professional duty and foresee that a claim might result either from the acts or omissions at issue in the motion and orders, or a related act or omission. Accordingly, for the reasons articulated herein, the Court concludes there is no genuine dispute as to any material fact and that Plaintiff Darwin is not entitled to summary judgment on this ground.

### C.  Type of "Damages" Covered

Plaintiff Darwin moved for summary judgment on different grounds, seeking a two-fold declaration from this Court: that Darwin "has no obligation to [1] defend or [2] indemnify the Firm, Megna or Matthews for any past, present or future Claims." (Doc. #22). Under South Carolina law, an insurer's duty to defend and duty to indemnify are separate and distinct duties arising from an insurance policy. See Am. Cas. Co. v. Howard, 187 F.2d 322, 327 (4th Cir. 1951). Although these duties are related in the sense that the duty to defend protects against potential liability, the duty to defend exists regardless of the insurer's ultimate liability to the insured. See Sloan Const. Co. v. Central Nat'l Ins. Co. of Omaha, 236 S.E.2d 818, 820 (S.C. 1977).

The Defendants argue that if the Court were to hold that the Sanctions Matters "are not covered" by the 2010-2011 Policy because the not-yet awarded damages may not be covered by the Insurance Policy, it would improperly combine two distinct legal obligations owed by the insurer under the contract: the duty to defend and the duty to indemnify. (Doc. #32 at 11–12). The Defendants further assert that South Carolina courts have consistently held that an insurance company's "right and duty" to defend an insured arises even when there appears to be the potential for coverage under the policy.

The Court agrees. The 2010-2011 Insurance Policy specifically states that Darwin has "the right and duty to defend any Claim seeking Damages that are covered by this Policy and made against an Insured, even if any of the allegations of the Claim are groundless, false or fraudulent." (Doc. #22-5 at 9).

The 2012 Claim was based upon the motion filed by Truslow on November 28, 2011. (Doc. #22-21 at 2). That motion, although captioned as a motion for sanctions, specifically states that "Damages and sanctions are expected to exceed $500,000.00 and a status conference needs to be conducted before hearings are held." (Doc. #22-21 at 2 ¶ 3). No additional information is provided by the one-page motion as to the nature of the damages or what conduct on the part of the Defendants could possibly exceed the amount of $500,000.00. (Doc. #22-21).

In brief, at this point in the analysis, the Court has determined that Plaintiff Darwin is not entitled to rescind the four Insurance Policies at issue in this matter based upon the arguments raised in its summary judgment motion. Therefore, Plaintiff Darwin has a duty to defend the Defendants' 2012 Claim.

Plaintiff Darwin also moved for summary judgment on the coverage issue, on the basis that the Sanctions Matters do not seek damages that are covered by the Insurance Policies.

Plaintiff Darwin argues that damages, as defined in the 2010-2011 Policy, expressly does not include "criminal or civil fines, taxes, penalties (statutory or otherwise), fees or sanctions." (Doc. #22-1 at 39; Doc. #22-7 at 14 ¶ E; 2010-2011 Policy § II.E).  Therefore, Plaintiff Darwin argues, the Policies do not "afford coverage for the Sanctions Matters because there is no possibility of covered Damages."  (Doc. #22-1 at 40).

The Court has previously discussed the definition of damages in the 2010-2011 Policy in the context of the rescission issue, and the Court noted that the duty to indemnify an insured for an award of monetary "damages" does not apply to an award of purely "sanctions" by the terms of the Insurance Policies.  Under South Carolina law, an insurer's duty to defend is determined by the allegations of the underlying complaint.  Ellett Bros., Inc. v. U.S. Fid. & Guar. Co., 275 F.3d 384, 387–88 (4th Cir. 2001) (citing R.A. Earnhardt Textile Mach. Div., Inc. v. S.C. Ins. Co., 277 S.C. 88, 90, 282 S.E.2d 856, 857 (1981)).  The complaint is construed liberally, with all doubts resolved in favor of the insured.  Union Ins. Co. v. Soleil Grp., Inc., 465 F. Supp. 2d 567, 572–73 (D.S.C. 2006).  "If the underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend."  Id. at 573 (quoting Isle of Palms Pest Control Co. v. Monticello Ins. Co., 319 S.C. 12, 15, 459 S.E.2d 38, 40 (1980)); see also Gordon-Gallup Realtors, Inc. v. Cincinnati Ins. Co., 274 S.C. 468, 471, 265 S.E.2d 38, 40 (1980).  Thus, the duty to defend will still apply to a claim that includes a demand for monetary damages and sanctions.  "The duty to defend, which depends on the allegations in the underlying complaint, is broader than the duty to indemnify."  Id. at 575 n. 3; see also Green Textile Assocs., Inc. v. Fed. Ins. Co., No. 7:05-3233-HMH, 2006 WL 1677184, at *5 (D.S.C. June 16, 2006).

Based on the information in the record before this Court, and after careful review of the 2011 Truslow Motion, there is the possibility that any potential monetary award stemming from

that motion, which forms the basis for the Defendants' 2012 Claim, would be damages covered and subject to indemnification under the terms of the 2010-2011 Policy.[9]  Therefore, at this stage of the litigation, the Court concludes as a matter of law that Darwin's duty to defend the 2012 Claim is applicable because there are monetary damages sought in addition to sanctions. Accordingly, Plaintiff's motion for summary judgment is denied on that ground.

"While the duty to defend is based on the allegations in the underlying complaint, 'the duty to indemnify is based on the evidence found by the factfinder.'"  Union Ins. Co., 465 F. Supp. 2d at 573 (quoting Ellett Bros., Inc., 275 F.3d at 388).  Generally, whether an insurer has a duty to indemnify the insured for a particular liability is only ripe for consideration, for purposes of declaratory judgment actions, if findings of fact have been made in the underlying lawsuit. Id.; see also American Auto Ins. Co. v. Jacobs, No. 1:11-cv-00332-MR-DLH, 2013 WL 2632602 (W.D.N.C. June 11, 2013) ("An insurer's duty to indemnify generally is not ripe for decision until the insured has been called on to pay—for until then the precise ground of liability, and thus the relation of the insured's liability to the policy's coverage and exclusions, is uncertain.") (collecting cases).

The underlying 2011 Truslow Motion remains pending in state court and is, at this time, unresolved.  The resolution of the issue of duty to indemnify in the instant declaratory judgment action requires the resolution of factual questions which are at the center of the underlying state court proceeding, namely, whether Defendant Megna is liable for damages and sanctions in

---

[9] The Court also notes that the initial refusal by Plaintiff Darwin to defend the 2012 Claim as stated in the February 29, 2012 denial letter was rooted not in the notion that the 2012 Claim was based upon a motion for damages and sanctions, but rather, for the primary reason that the 2007 Truslow Claim, which was explicitly for sanctions alone, was the same claim arising out of the same conduct that was first made in 2007—outside of the coverage period.  Even in denying the 2012 Claim initially, Darwin implied that the 2007 Truslow Motion would have been subject to the duty to defend if made within the coverage period, as would the 2012 Claim, if they had not been, in Darwin's view, a single claim with the 2007 Motion.  (See Doc. #32-7 at 2–7).

connection with the 2012 Claim, and if so, the legal basis for Defendant Megna's liability.  Only once those determinations are made can this Court determine whether the monetary liability would constitute damages covered by the Policy and subject to Darwin's duty to indemnify.  See American Auto Ins. Co., 2013 WL 2632602, at *2; Nationwide Ins. v. Zavalis, 52 F.3d 689, 692–93 (7th Cir. 1995).  In addition, it is possible that no liability of the Defendants results from the 2012 Claim, in which case the declaratory judgment action would be rendered moot.  For these reasons, the Court concludes that the issue of indemnification is not sufficiently ripe to present a "case or controversy," and that, if there were, the Court would still, in the exercise of discretion, decline to provide declaratory relief on that question.  Allstate Indem. Co. v. Lewis, 985 F. Supp. 1341, 1350 (M.D. Ala 1997).  Until the resolution of the state court proceeding on the 2011 Truslow Motion, this Court cannot determine the nature of any potential award based on liability on the part of the Defendants.

The Court concludes that the issue of indemnification is not ripe for consideration because there is a dispute as to whether, if awarded, the award of Damages and/or Sanctions would fit the definition of "damages" as to be covered by the Insurance Policies.  One party characterizes the 2011 Truslow Motion as a motion seeking damages rather than sanctions against the Defendants, but is couched as a motion for sanctions.  If any award constitutes "sanctions" it may not be covered by the Insurance Policies indemnification provision, although the duty to defend would still apply.  On the other hand, if the award is for actual "damages" rather than "sanctions," it could well be covered by the Insurance Policies.  Therefore, the indemnification is not ripe and the Court lacks subject matter jurisdiction to consider this issue. See Union Ins. Co., 465 F. Supp. 2d at 575.  Accordingly, the Plaintiff's Motion for Summary Judgment on this ground is denied and the indemnification claim is dismissed without prejudice.

## IV. <u>DEFENDANTS' COUNTERCLAIMS</u>

Additionally, the Plaintiff argues that it is entitled to summary judgment on each of the four counterclaims asserted against the Plaintiff by the Defendants.  Defendants' have brought counterclaims for breach of the duty of good faith and fair dealing, breach of fiduciary duty, breach of contract, and also seek a declaratory judgment that they are entitled to coverage under the Insurance Policies for the Sanction Matter.

The Court concludes there is a sufficient factual dispute as to these counterclaims based on the record at this point in the litigation.  Therefore, the Plaintiff's Motion for Summary Judgment as to the four counterclaims is denied.

## V. <u>CONCLUSION</u>

The Court concludes that Plaintiff Darwin is not entitled to rescind the Insurance Policies it issued to the Defendants and that the 2011-2012 Policy applies to the 2012 Claim against the Defendants in the underlying state court proceeding.  Consequently, Darwin has a duty to defend that claim.  However, the question of whether Plaintiff Darwin might ultimately have a duty to indemnify the Defendants against any monetary award in connection with the 2012 Claim is not timely brought before this Court.

Thus, after careful consideration, for the reasons stated herein, **IT IS ORDERED** that the Plaintiff's Motion for Summary Judgment (Doc. #22) is hereby **DENIED**.

**IT IS SO ORDERED.**

<u>s/ Terry L. Wooten</u>
TERRY L. WOOTEN
Chief United States District Judge

July 29, 2014
Columbia, South Carolina